**Curtis and Mary ADKINS, Plaintiffs,**

v.

**GAF CORPORATION, et al., Defendants.**

**No. C–1–85–1395.**

United States District Court, S.D. Ohio, W.D.

Nov. 17, 1988.

M. Catherine Lacinak, Kircher & Phalen, Michael D. Eagen, Cincinnati, Ohio, for plaintiffs.

Jane E. Garfinkel, Smith & Schnacke, Cincinnati, Ohio, for defendants.

## ORDER

HERMAN J. WEBER, District Judge.

This matter is before the Court upon the return of the special verdict of the jury after trial on the claims of plaintiffs Curtis and Mary Adkins against defendants Carey Canada, Inc. ("Carey") and GAF Corporation ("GAF"), and pursuant to a trial to the Court, in the same proceeding, on plaintiffs' claims against defendants Asbestos Corporation, Ltd. ("ACL") and Celotex Corporation ("Celotex"). The jury made findings against Carey and GAF and advisory findings against ACL. The Court made findings on the record pursuant to cross-motions by plaintiffs and Celotex for direct-ed verdict made at the conclusion of all the evidence on the claims against Celotex. The Court granted the Motion of plaintiffs and denied the Motion of Celotex.

First, the Court will make findings of fact and conclusions of law as to the determination of liability and damages with respect to defendant ACL. Second, in light of the most recent decisions of the Ohio Supreme Court and the United States Court of Appeals for the Sixth Circuit with regard to intentional torts, *Van Fossen v. Babcock & Wilcox Company*, 36 Ohio St. 3d 100, 522 N.E.2d 489 (1988); *Pariseau v. Wedge Products, Inc.*, 36 Ohio St.3d 124, 522 N.E.2d 511 (1988); *Kunkler v. Goodyear Tire & Rubber Company*, 36 Ohio St.3d 135, 522 N.E.2d 477 (1988); *Pratt v. National Distillers & Chemical Corporation*, 853 F.2d 1329 (6th Cir.), *reh'g denied* September 19, 1988, this Court is required to find, contrary to its previous decision in this case, that plaintiffs retain the right to a trial by jury on their intentional tort claims against Celotex and, therefore, the Court will revisit all issues relevant to those claims.

### Findings of Fact

Asbestos is a naturally occurring fibrous mineral. It is mined from rock formations, crushed, processed and packaged for resale to users.

Historically, asbestos has had wide use, owing to its high tensile strength and fire-resistance.

ACL mines chrysotile asbestos. The chrysotile asbestos sold by ACL is processed raw asbestos fiber.

Asbestos exposure causes asbestosis. This fact was general knowledge in the asbestos industry in the State of Ohio at least after 1945.

Not every exposure to asbestos, however, causes asbestosis. The incidence of asbestosis associated with asbestos exposure depends on many different factors, including the intensity of exposure, length of exposure, individual characteristics of the exposed individual, and other factors.

Asbestosis is an interstitial lung disease involving primarily the parenchyma of the lung.

At all times relevant to this case, asbestos use in Ohio was regulated by the Ohio Department of Health's *Legal Requirements for the Prevention and Control of Industrial Public Health Hazards,* which specified a maximum allowable concentration for exposure to dust containing asbestos fiber.

Regulation 247 of the *Legal Requirements for the Prevention and Control of Industrial Public Health Hazards* expressly stated that the maximum allowable concentration for asbestos exposure in Ohio was five million particles of dust containing asbestos per cubic foot of air ("5MPPCF") or below for an eight hour period. An exposure level of 5MPPCF of air is not visible to the naked eye.

Pursuant to the 1946 Ohio regulations, asbestos exposure levels in workplaces were to be measured in the so-called "breathing zone" of the worker, which is the immediate cubic area around the head and face of the worker.

At all times pertinent to this litigation, it was the prevailing scientific and medical opinion that asbestos could be used safely for its ordinary and intended industrial applications if limitations on exposure were observed.

Celotex, formerly Philip Carey, is a manufacturer of products used in the construction industry. Many of its products, such as cement, millboard, cement board, insulation, shingles and roofing paper contained asbestos. At any one time during the period of time relevant to this case, the Celotex manufacturing facility in Lockland, Ohio employed over 1,000 workers, and the company's products were made in different buildings at the plant.

In 1951, Mr. Adkins began his employment at the Celotex plant in Lockland where he worked until 1987.

During the period of his employment, Mr. Adkins worked at different jobs at the Celotex Lockland plant, including positions in the cement plant, the felt mill, the paint house, and he unloaded railroad cars which transported ACL's processed asbestos fiber in burlap or paper bags to Celotex.

While Mr. Adkins worked at Celotex, asbestos containing dust was visible in the air in his breathing zone at the Celotex Lockland plant including the railroad cars. As an exposure level of 5MPPCF (5,000,000) of air is not visible to the naked eye, where heavy dust concentrations are visible, fiber exposure may be as high as eight hundred million (800,000,000) fibers per cubic foot.

During his work at Celotex, Mr. Adkins was exposed to processed asbestos fiber sold by ACL in amounts exceeding the levels established by Regulation 247 of the *Legal Requirements for the Prevention and Control of Industrial Public Health Hazards.*

At no time did Celotex or ACL ever specifically tell Mr. Adkins that asbestos might be hazardous to his health.

Regulation 254 of the *Legal Requirements for the Prevention and Control of Industrial Public Health Hazards* mandated that Celotex warn its employees of the hazards of using toxic substances in the workplace.

The *Legal Requirements for the Prevention and Control of Industrial Public Health Hazards* placed a duty on Celotex to protect Mr. Adkins from exposure to unsafe levels of asbestos fiber.

During Mr. Adkins' employment, Celotex utilized exhaust fans and ventilation equipment in some areas of the plant to reduce exposure to dust. In addition, Celotex performed air sampling and monitoring and had work rules requiring the use of respirators on certain jobs.

In 1962, Philip Carey, predecessor to Celotex, hired Dr. Thomas Mancuso, an occupational physician and former Chief of the Division of Industrial Hygiene of the Ohio Department of Health. One of his duties for Philip Carey was to study and report to Philip Carey on the asbestos exposure of the workers in the Celotex Lockland plant.

While he was the Chief of the Division of Industrial Hygiene, Dr. Mancuso, in or around 1945, drafted the regulations and

standards set out in *Legal Requirements for the Prevention and Control of Industrial Public Health Hazards,* including the 5MPPFC limit on asbestos exposure.

In 1963, Dr. Mancuso transmitted to Philip Carey's corporate officers numerous medical articles by leading authorities in the field detailing the hazardous nature of asbestos and its deleterious effects on human health under certain conditions.

Based on his personal inspection of the Celotex Lockland plant, Dr. Mancuso concluded that workers were being exposed to levels of asbestos substantially in excess of the concentrations permitted in the *Legal Requirements for the Prevention and Control of Industrial Public Health Hazards.*

In 1963, Dr. Mancuso submitted a report to Philip Carey indicating the areas of the Celotex Lockland plant which required immediate attention so as to control and reduce the hazards of asbestos dust which he had found.

During the period of Mr. Adkins' employment, Celotex had knowledge of the hazards of asbestos exposure and its duty to protect employees from exposure levels exceeding the limits set by the State of Ohio.

At all times relevant to this case, Celotex could have reduced the level of asbestos exposure in the Lockland plant by better use of ventilation, housekeeping and respirator programs.

During the period of Mr. Adkins' employment, Carey Canadian Mines was a wholly-owned subsidiary of Philip Carey and later became a corporate affiliate of the Celotex Corporation.

In the 1950's, 1960's and 1970's, Philip Carey, Celotex and Carey Canadian Mines had directors and officers in common.

Prior to 1951, the mining companies located in Thetford Mines, including Carey Canadian Mines and ACL, funded a medical clinic known as the Thetford Industrial Clinic and hired Dr. Paul Cartier as its director.

During his tenure at the Thetford Industrial Clinic, Dr. Cartier was engaged in medical research on asbestos related diseases. As director of the Thetford Industrial Clinic, Dr. Cartier participated in meetings of the leading doctors, scientists and industrial hygienists on the subject of asbestos and asbestos related diseases. Dr. Cartier was a speaker at the Seventh Saranac Symposium in 1952 and at the meeting of the New York Academy of Sciences in 1964 where he spoke on asbestos related diseases. Dr. Gerritt W.H. Schepers, Dr. Thomas Mancuso and Dr. Irving Selikoff were also present at the meeting at the New York Academy of Sciences in 1964, as were many of the leading participants in the asbestos industry.

From 1949 until the mid–1970's, Dr. Cartier published articles on asbestos related diseases in widely distributed medical journals. Those journals included the *Journal of the Americal Medical Association, The Archives of Industrial Hygiene and Occupational Medicine,* and *The Archives of Environmental Health.*

Carey Canadian Mines and ACL were aware of Dr. Cartier's activities and of his findings regarding asbestos related diseases.

Owing to their common officers and directors, Carey Canadian Mines' knowledge of the dangers of asbestos fiber was known by Celotex.

Based on the available medical and scientific evidence in the 1940's, 1950's, 1960's and 1970's, exposure to asbestos fiber in certain concentrations was known by the defendants to cause asbestosis.

Carey Canadian Mines supplied approximately 50% of the raw asbestos fiber used by Celotex at the Celotex Lockland plant during the period of Mr. Adkins' employment. Other suppliers included Johns–Manville, GAF and ACL.

During the 1950's and 1960's, processed raw asbestos fiber was sold by the mining companies in burlap and paper bags. All the mining companies sold raw asbestos fiber in the same manner.

ACL sold processed asbestos fiber to the Celotex Lockland plant and the processed asbestos fiber was a product which was

purchased by Celotex for use at the Celotex Lockland plant.

ACL knew in detail how the Celotex Lockland plant was operated.

At all times relevant to this case, ACL gave no warning of any kind on its bags of processed raw asbestos fiber or otherwise that the effect of excessive exposure to asbestos fiber causes asbestosis.

From 1962 to 1982, Mr. Adkins smoked cigarettes.

Mr. Adkins was an ordinary consumer of the product sold by ACL.

Mr. Adkins has asbestosis.

Mr. Adkins was exposed to processed asbestos fibers sold by ACL.

The asbestos product sold by ACL to the Celotex Lockland facility during the period of Mr. Adkins' employment was in a defective condition unreasonably dangerous in that it was more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

The asbestos product sold by ACL directly and proximately caused injury to Mr. and Mrs. Adkins.

■ ACL was negligent in selling its product of asbestos fibers without any warning to the Celotex Lockland facility during the period of Mr. Adkins' employment, and that negligence directly and proximately caused injury to Mr. and Mrs. Adkins.

ACL negligently failed to provide adequate warnings to the workers at the Celotex Lockland facility during the period of Mr. Adkins' employment.

■ The conduct of Celotex and its predecessors was negligent and that negligence directly and proximately caused plaintiffs' asbestos-related injuries.

Mr. Adkins was also negligent, and his negligence also directly and proximately caused plaintiffs' asbestos-related injuries.

■ The percentages of responsibility of each party which directly and proximately caused plaintiffs' asbestos-related injuries are as follows: Mr. Adkins—4%, ACL— 10%, Carey—25%, GAF—8%, and Celotex— 53%, which total represents 100% of the liability in this case.

The Court adopts the damages found by the jury as its determination of the amount of damages for plaintiffs' asbestos-related injuries.

### Conclusions of Law

■ Under the facts of this case, plaintiff is not entitled to a trial by jury against ACL (doc. no. 47).

■ Based on the medical and scientific evidence available in the 1940's, 1950's, 1960's and 1970's, it was believed that asbestos could be used so that it would not be a significant health hazard to workers. The raw asbestos fiber, by itself, is not an unavoidably unsafe product. *See Seley v. G.D. Searle & Co.,* 67 Ohio St.2d 192, 423 N.E.2d 831 (1981).

The definitive statement of the policy and goals underlying the application of strict liability in tort cases involving defective products is provided in Section 402A of the Restatement of the Law 2d, Torts (1965) Comment c at 349–350:

On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; *that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production* against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products. (Emphasis added.)

Cited in *Bowling v. Heil Co.* (1987), 31 Ohio St.3d 277, 284, 511 N.E.2d 373.

■ ACL is strictly liable under Ohio law because its product of processed raw asbestos fiber is a defective product. *See Bowling*, 31 Ohio St.3d 277, 511 N.E.2d 373.

ACL is strictly liable under Ohio law because its product of processed raw asbestos fiber does have a design defect. *See id.*

■ Comparative negligence has no application to products liability cases based on strict liability. *Id.*

■ As processed raw asbestos fiber is not unavoidably unsafe, ACL is not strictly liable solely for a failure to warn under Ohio law, but its failure to warn is part of the totality of the circumstances which makes its product defective. *Knitz v. Minster Machine Co.*, 69 Ohio St.2d 460, 432 N.E.2d 814 (1982); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977); *Overbee v. Van Waters & Rogers*, 706 F.2d 768 (6th Cir.1983).

■ ACL is not strictly liable solely for packaging processed asbestos in burlap bags and/or paper bags, however, this packaging method is part of the totality of the circumstances which make its product defective.

■ The packaging of processed raw asbestos fiber in burlap bags and/or paper bags without any warning on the bags does constitute negligence.

■ The failure of Celotex to eliminate the hazard presented by the packaging of raw asbestos fibers by ACL and Celotex's failure to maintain the proper threshold limits for dust containing asbestos in its plant and unloading areas through the use of dust control devices, ventilation, personal respiratory equipment and appropriate warnings as required under Ohio law does constitute negligence.

■ Celotex had a duty to warn Mr. Adkins of the dangers of exposure to unsafe levels of asbestos fiber, and to protect Mr. Adkins from those dangers.

■ The sale of processed raw asbestos fiber by ACL, a mining company, to Celotex, where Celotex has full knowledge of the hazards associated with use of the asbestos fiber, does not protect ACL from strict products liability to users of its product. *See Bowling*, 31 Ohio St.3d 277, 511 N.E.2d 373.

Celotex's disregard of accepted industrial hygiene standards which were intended to protect workers from unsafe levels of asbestos constitutes negligence; this negligence combined with the conduct of ACL to directly and proximately cause injury to plaintiffs.

Celotex's reckless indifference to the safety and health of its workers, including specifically ignoring the available medical and scientific literature, disregarding information known by Carey Canadian Mines, and failing to act on the suggestions and recommendations of Dr. Mancuso, constitutes negligence.

The failure of ACL to warn of the dangers associated with exposure to asbestos on its bags containing raw asbestos fiber or otherwise was a proximate cause of injury to Mr. Adkins.

Any warning which ACL might have given on its bags would have provided important information to Mr. Adkins.

Mr. Adkins' exposure to asbestos fiber sold by ACL was a substantial cause of plaintiffs' asbestos-related injuries.

■ Mr. Adkins was negligent in failing to use respiratory equipment.

■ Mr. Adkins is entitled to recover damages for future emotional and physical suffering.

■ Pursuant to the trial record and the Court's findings and ruling on the issue of punitive damages as to the other defendants in this case, plaintiffs are not entitled to punitive damages as a matter of law against ACL because ACL has not acted in actual malice, nor does its total conduct manifest a flagrant indifference to the probability that the product exposes consumers to unreasonable risks of harm.

The advisory verdict of the jury regarding damages against ACL is accepted by the Court as the amount of damages suffered by the plaintiffs.

Based upon the foregoing, the Court finds in favor of plaintiffs Curtis and Mary Adkins on their claims against Asbestos Corporation, Ltd.

### Intentional Tort

This Court has jurisdiction over this action.

■■■ So long as the Court has jurisdiction over the action, it has complete power over interlocutory orders made therein and has authority to revise them when it is "consonant with equity" to do so. *Simmons v. Grier Bros. Co.*, 258 U.S. 82, 42 S.Ct. 196, 66 L.Ed. 475 (1922). As this Court has not made a final entry of judgment disposing of all claims in this litigation, it has the inherent power to reconsider its ruling on the intentional tort claims of plaintiffs.

The Court's ruling on the intentional tort claims was an interlocutory order as defined by Fed.R.Civ.P. 54(b) which is entitled "Judgment Upon Multiple Claims or Involving Multiple Parties," and which provides in substance that:

In the absence of the "express determination" and "express directive" provided for by 54(b), an adjudication of one or more but less than all the claims in an action, or an adjudication of one or more but less than all the parties is interlocutory and subject to revision at any time before the entry of judgment adjudicating all the claims, or adjudicating all the rights and obligation of all the parties.

Rule 54(b), therefore, supports this Court's authority to revise or vacate its previous Order.

This Court's ruling contained no express determination by this Court that the claims and issues decided therein should be certified as final for purposes of appeal nor was there an express direction for entry of judgment. As such, the ruling in favor of plaintiffs on the intentional tort is interloc-

utory which this Court has authority to vacate or amend.

Accordingly, pursuant to Rule 54(b), this Court MODIFIES its ruling in favor of plaintiffs on the intentional tort.

■■■ Ohio Revised Code § 4121.80(G)(1) provides in part:

Deliberate removal by the employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance is evidence, the presumption of which may be rebutted, of an act committed with the intent to injure another if injury or an occupational disease or condition occurs as a direct result.

A misrepresentation may be an omission as well as a commission. *See O'Neal v. Burger Chef Systems, Inc.*, 860 F.2d 1341 (6th Cir.1988); *see also United States v. Van Dyke*, 605 F.2d 220, 225 (6th Cir.1979) citing *United States v. New South Farm & Home Co.*, 241 U.S. 64, 71, 36 S.Ct. 505, 507, 60 L.Ed. 890 (1916); see also in the securities context, *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *and also Chelsea Associates v. Rapanos*, 527 F.2d 1266 (6th Cir.1975).

This Court believed, as advocated by Celotex, that the terms of this statute applied to this case. Applying this statute in its analysis of the facts of this case, this Court concluded that reasonable minds would find that Celotex committed an intentional tort. The basis for that ruling was the statutory presumption and definition of the "intent" element contained in the Ohio intentional tort statute. So concluding, this Court found in favor of the plaintiffs on their claim against Celotex for intentional tort.

This Court is now instructed that it cannot apply this statute to this case. *Van Fossen*, 36 Ohio St.3d at 109, 522 N.E.2d 489; *Pariseau*, 36 Ohio St.3d at 129, 522 N.E.2d 511; *Kunkler*, 36 Ohio St.3d at 137–138, 522 N.E.2d 477; *Pratt*, 853 F.2d at 1334–1336.

Rather, this Court is specifically instructed that the failure to warn in and of itself is not sufficient to prove intent. *Van Fos-*

*sen,* 36 Ohio St.3d at 117, 522 N.E.2d 489; *Pratt,* 853 F.2d at 1337–1338.

The only fact which caused this Court to conclude that Celotex committed an intentional tort rather than that it engaged in reckless conduct was Celotex's failure to warn Mr. Adkins of the dangers from exposure to dust containing asbestos fibers. This conclusion was based on the application of the statute.

This Court believed that this failure to warn was a deliberate misrepresentation, by omission, of a hazardous substance.

This Court is bound by the instruction of the authoritative Courts which have erased the presumption provided in the Ohio intentional tort statute for this case. As this statute and its concept cannot now be applied to this case, reasonable minds would find that while the conduct of Celotex was negligent and even reckless, absent the statute, that conduct does not constitute an intentional tort under the common law as defined in the syllabus of *Van Fossen. Van Fossen,* 36 Ohio St.3d at 101, nos. 5 and 6, 522 N.E.2d 489.

This Court must, therefore, modify its ruling on the cross-motions for a directed verdict by the parties. Based upon the foregoing, the Court VACATES its ruling in favor of the plaintiffs and against the defendant.

Accordingly, upon consideration of the evidence in light of *Van Fossen, Pariseau, Kunkler* and *Pratt,* and incorporating the findings of fact herein, the Court finds that absent the statutory presumption, plaintiff has failed to present sufficient evidence to submit the intentional tort claim to a jury; therefore, the Court DENIES plaintiffs' Motions for Directed Verdict and GRANTS defendant Celotex's Motion for Directed Verdict which were made after the submission of all the evidence.

### Conclusion

Judgment shall be entered consistent with this opinion in favor of plaintiffs Curtis and Mary Adkins on their claims against defendant ACL and in favor of defendant Celotex on the intentional tort claims of plaintiffs; such judgment will be by separate entry.

IT IS SO ORDERED.

### FINAL JUDGMENT ENTRY

Pursuant to the jury verdict returned and entered in this matter, and pursuant to the Court's findings of fact and law entered by separate Order, judgment is hereby GRANTED in favor of plaintiffs Curtis Adkins and Mary Adkins, against defendants Asbestos Corporation, Ltd., Carey Canada, Inc. and GAF Corporation on the strict liability claims, jointly and severally, in the amount of $891,500.00 for Curtis Adkins and in the amount of $200,000.00 for Mary Adkins, plus costs and legal interest from June 26, 1987.

Further, pursuant to this Court's findings of fact and conclusions of law entered separately this date, judgment is hereby GRANTED in favor of defendant the Celotex Corporation on plaintiffs' intentional tort claims.

Should the verdict in favor of plaintiffs on strict liability be vacated on appeal, or otherwise be unenforceable, judgment on the negligence claims shall be granted in favor of plaintiffs Curtis Adkins and Mary Adkins pursuant to the jury verdict and the Court's findings against defendants Asbestos Corporation, Ltd., Carey Canada, Inc. and GAF Corporation as follows, plus costs and legal interest from June 26, 1987 as follows:

*For Curtis Adkins as against:*

Asbestos Corporation, Ltd.—$85,584.00

Carey Canada, Inc.—$213,960.00

GAF Corporation—$68,467.00

*For Mary Adkins as against:*

Asbestos Corporation, Ltd.—$19,200.00

Carey Canada, Inc.—$48,000.00

GAF Corporation—$15,360.00

Consistent with this judgment entry, plaintiffs' motion for pre-judgment interest, including their request for a full hearing to allow the examination of decision-makers in the Asbestos Claims Facility is

**568**

DENIED. It is this Court's opinion that the trial of this case was not necessarily or solely based on the parties' settlement efforts. The law in the State of Ohio with regard to the intentional tort issue was unresolved and unclear at the time of trial; plaintiffs' pursuit of punitive damages made any accurate appraisal of damages impossible; the nature of negotiations between these parties in other cases prior to this trial is not significant to the settlement efforts in this case and does not indicate bad faith; and the amount of the verdict rendered by the jury in this case does not relate to the meaningfulness or reasonableness, or absence thereof, of the settlement negotiations in this case. Accordingly, under these particular facts and circumstances, and in the exercise of discretion, the Court hereby DENIES plaintiffs' Motion for Imposition of Pre–Judgment Interest (doc. no. 93).

Further, pursuant to the trial record and the Court's findings and ruling on the issue of punitive damages, plaintiffs' request for punitive damages is DENIED.

Additionally, pursuant to the Restatement of Judgments (Second), Section 26, the Court expressly reserves to plaintiffs the right in the future to bring a second, independent civil action against one or more of these defendants based on an asbestos-related malignancy if and when plaintiff Curtis Adkins develops such a malignancy.

Final judgment is hereby entered according to the terms stated herein.

IT IS SO ORDERED.