David DAY, et al., Plaintiffs,

v.

NLO, INC., et al., Defendants.

No. C–1–90–67.

United States District Court, S.D. Ohio, W.D.

Jan. 11, 1993.

Thomas Joseph Kircher, Kircher, Robin-
son, Cook, Newman & Welch, Paul M. De
Marco, Allen Paul Grunes, Waite, Schneider,

Bayless & Chesley Co, Cincinnati, OH, for plaintiffs.

William Howard Hawkins, II, Frost & Jacobs, John Stephen Wirthlin, Sr., Kevin T. Van Wart, Beirne & Wirthlin, Cincinnati, OH, Herbert L. Fenster, McKenna, Conner & Cuneo, Washington, DC, David M. Bernick, Kirkland & Ellis, Chicago, IL, for defendants.

## ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

SPIEGEL, District Judge.

This matter is before the Court on the following motions: the Defendants' Motion for Summary Judgment (doc. 212), the Defendants' Motion for Summary Judgment (doc. 238), the Defendants' Motion to Dismiss (doc. 253), the Plaintiffs' Combined Memorandum in Opposition (doc. 301), the Defendants' Motion to Dismiss (doc. 304), the Defendants' Reply (doc. 306), the Plaintiffs' Response (doc. 312), the Defendants' Notice of Filing (doc. 315), and the Plaintiffs' Surreply (doc. 323).[1]

This Court has already held a lengthy statute of limitations trial in this case. Last month, the Court granted the Defendants' Motion to Dismiss certain counts contained in the Plaintiffs' Complaint. Still, the Defendants have filed additional motions. As this Court has already expressed to the Defendants, we have concerns over the propriety of filing multiple, piecemeal pre-trial motions. *See generally, Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697, 701 (6th Cir.1978) (noting in the context of Fed.R.Civ.P. 12 that unnecessary delay may result when a court considers piecemeal pre-trial motions).

## BACKGROUND

The Defendants in this case operated the Feed Materials Production Center ("FMPC") located in Fernald, Ohio. At the FMPC, National Lead of Ohio, Inc. ("NLO") was involved in certain aspects of the development and manufacture of nuclear weapons for our country's armed services.

In this case, the workers and frequenters of NLO have brought suit alleging that they have been harmed as a result of the Defendants' actions at the FMPC. Specifically, the Plaintiffs claim that they are suffering from an increased risk of disease, emotional distress in light of the increased risk of disease, and disease itself.

At its core, this lawsuit has posed difficult questions of how to deal fairly with an alleged mass tort while ensuring a just adjudication. One scholar aptly observed:

> Nuclear power, toxic chemicals, pesticides, dangerous drugs and other products of twentieth century technology present our society, and consequently our legal system, with an enormous challenge.... The delicate balance between assuring safety and encouraging economic development and innovation is increasingly difficult to maintain.

Robert A. Bohrer, *Fear and Trembling in the Twentieth Century: Technology, Risk, Uncertainty and Emotional Distress*, Wis. L.Rev. 83 (1984). In this Order, and in the previous Orders in this case, we have attempted to decide the motions before the Court justly and according to the law. We recognize, however, that this case does not fit into neat, nineteenth-century common law concepts. Rather, the alleged ramifications of twentieth century technology have forced this Court to resolve uncharted, novel issues in the law.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "... genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether issues exist that should be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir. 1982).

---

1. In the interests of fully hearing the parties' arguments, we shall consider the Plaintiffs' Surreply.

The moving party "has the burden of showing *conclusively* that there exists no genuine issues as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.) (emphasis in original), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). Moreover, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] court." *Id.* (quoting Rule 56(c), Fed.R.Civ.P.).

Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Id.* The Supreme Court elaborated upon this standard, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial....

*Id.* at 322, 106 S.Ct. at 2552. Summary judgment is not appropriate if a dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Nevertheless, conclusory allegations are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir.1990).

## PLAINTIFFS' CLAIMS INVOLVING EMOTIONAL DISTRESS

The Defendants' first motion to end this litigation is a Motion for Summary Judgment on the Plaintiffs' claims for emotional distress. The Defendants argue as a matter of law that the Plaintiffs have not suffered the requisite severe and debilitating emotional distress.

### The Law in Ohio on Emotional Distress

■ Under Ohio law, a plaintiff who has not suffered a physical injury may only recover for emotional distress that is severe and debilitating. *Paugh v. Hanks*, 6 Ohio St.3d 72, 451 N.E.2d 759 (1983). In following Ohio law, our parent court explained that "[w]here a plaintiff seeks to recover for emotional or psychiatric injury alone, 'plaintiffs [are] limited to only those which are "severe and debilitating" to a reasonable person.'" *Igo v. Coachmen Indus., Inc.*, 938 F.2d 650, 656 (6th Cir.1991) (quoting *Paugh*, 6 Ohio St.3d at 72, 451 N.E.2d at 759) (bracketed material contained in *Igo*).

■ The severe and debilitating requirement does not apply to emotional distress cases which are *accompanied by physical injury*. *Binns v. Fredendall*, 32 Ohio St.3d 244, 513 N.E.2d 278 (1987); *see generally*, *Adkins v. Gen. Motors Corp.*, 556 F.Supp. 452, 458 (S.D.Ohio 1983) ("under Ohio law, damages for intentional infliction of emotional distress are recoverable if contemporary physical injury was inflicted...."). The distinction between emotional distress with physical injury and emotional distress without physical injury is drawn to prevent a possible torrent of future claims which might occur if people could sue for any event they found to be emotionally disturbing. Thus, the severe and debilitating requirement ensures that no liability will be affixed for emotional distress claims which are fraudulent or even too speculative. *See* Bohrer, *Fear and Trembling in the Twentieth Century: Technology, Risk, Uncertainty and Emotional Distress*, Wis.L.Rev. at 94.

■ As the Defendants themselves have acknowledged in previous pleadings, the Plaintiffs are claiming in this lawsuit to have suffered physical injury as a result of a physical stimulus—being exposed to radioactive and other hazardous materials. *See* Defendants' Motion to Dismiss, doc. 290; Defen-

dants' Reply, doc. 300.[2] Thus, the Plaintiffs are not only suing for their emotional distress, but also the increased risk of disease and disease, itself. *See Day v. NLO, Inc.,* 811 F.Supp. 1271, 1279, 1280 n. 9 (S.D.Ohio 1992) (J. Spiegel) (doc. 311).[3]

The decision in *Adkins v. GAF Corp.,* 706 F.Supp. 559 (S.D.Ohio 1988), *aff'd in part, vacated in part on other grounds,* 923 F.2d 1225 (6th Cir.1991), is somewhat analogous to the case now before this Court. In *Adkins,* the employee of a manufacturer of construction products sued both his employer and the suppliers of his employer. In his lawsuit, the plaintiff-employee alleged that he became ill after prolonged exposure to asbestos at work. The *Adkins* court held that the plaintiff-employee could recover for his emotional distress and his physical injuries. *Id.*

at 565. In making this finding, the *Adkins* court did not determine whether the plaintiff had suffered from severe and debilitating emotional distress. The court did not need to make this determination because the plaintiff suffered from the physical affliction of asbestosis.[4] Thus, a plaintiff may recover for his or her non-severe, non-debilitating emotional distress when it is accompanied by a physical injury.

Furthermore, even if the Plaintiffs' case did not involve physical injuries, this Court would have grave reservations about granting the Defendants' Motion for Summary Judgment. In *Binns v. Fredendall,* the Ohio Supreme Court observed in a footnote that a court must first determine ". . . as a matter of law whether there was proof of emotional

---

**2.** The Defendants stated in an earlier Reply brief the following:

Not only do plaintiffs seek damages for (1) an alleged 'injury'—radiation exposures, but also for (2) an alleged 'bodily condition'—irradiated tissue that plaintiffs claim will lead and has led to disease and other adverse health effects, and (3) an alleged 'occupational disease,' which the Act defines to include claims based on radiation exposure. O.R.C. §§ 4123.68; 4123.74.

Defendants Reply, doc. 300, at 10. The Defendants further state that:

Recent discovery responses have confirmed the physical, bodily nature of plaintiffs' claims. Plaintiffs contend not only that disease processes are underway, but their health already is impaired.

*Id.* at 14.

**3.** This Court has admonished the Plaintiffs repeatedly to sharpen their allegations. In the Court's November 20, 1992 Order, the Court re-examined the Plaintiffs' Complaint and determined that the Plaintiffs have made claims concerning the increased risk of disease, emotional distress over the increased risk of disease, and disease itself. Doc. 311, at 19, n. 9.

In footnote 9 of this Court's November 20, 1992 Order, we noted a discrepancy in the Defendants' position. The Court, however, was not sufficiently clear in describing this discrepancy in its earlier Order and therefore clarify it here. The discrepancy in the Defendants' position is more readily apparent when the Defendants' quotes in footnote 2 of this Order are compared with the Defendants' statement in a previous pleading that "[t]here are no claims of sickness, disease, death or actual bodily injury [by the Plaintiffs]." Doc. 295, at 14.

**4.** The Defendants cite to *Roese v. Battelle Mem. Inst.,* Case No. 90AP–213, 1991 WL 10923 (Ohio Ct.App., Franklin Cty., March 27, 1991), in sup-

port of their position. In *Roese,* the court considered the appeal of a husband and his wife against his employer, the Battelle Memorial Institute. The plaintiff-appellants claimed that the employer had knowingly and intentionally exposed them to hazardous materials. Among other causes of action, the plaintiffs sued for their emotional distress. In analyzing this cause of action, the *Roese* court stated that "[t]he alleged physical injury upon which appellants base their claim is Roese's elevated white blood cell count." *Id.* at 6.

The *Roese* court held as a matter of law that a change in the plaintiff-employee's white blood cell count did not constitute a physical injury. The court reasoned that "[b]ecause people with high white blood cell counts can lead a normal life and never develop an injury . . ." the plaintiff-employee did not have a "physical injury" for purposes of analyzing the plaintiffs' emotional distress. *Id.* The court then held that the plaintiffs did not suffer from severe and debilitating emotional distress as a matter of law. *Id.* We are unsure of the soundness of the holding in *Roese,* as an increase in the white-blood cell count appears to constitute a significant change in the body.

In any event, the case before this Court, however, is distinguishable. The Plaintiffs in *Day v. NLO* are alleging emotional distress, increased risk of cancer, and cancer, itself. We assume that the Plaintiffs are basing their emotional distress claims on the increased risk of cancer and cancer itself. Unlike a high white blood cell count, many people cannot lead normal lives with an increased risk of cancer or cancer itself. Therefore, we conclude that the decision in *Roese* supports this Court's holding that the Plaintiffs in this case may sue for their emotional distress, because they also claim to have suffered a physical injury.

distress that was more than trifling, mere upset, or hurt feelings." 32 Ohio St.3d 244, 245 n. 1, 513 N.E.2d 278, 280 n. 1. After a court makes this initial decision, a court should then allow the *jury* to determine whether the emotional distress actually suffered was severe and debilitating. *Id.*

At this juncture, we find that the Plaintiffs have suffered emotional distress that is more than trifling, mere upset, or hurt feelings. The Plaintiffs' emotional distress stems from the facts and allegations about the environmental conditions at the FMPC which have surfaced in the last decade. For instance, NLO's corporate representative, Weldon Adams, admitted in a prior affidavit that NLO planned releases of uranium at the FMPC. Affidavit of Weldon Adams, ¶ 27, at 9, Defendants' exh. 37, *In re Fernald,* Case No. C-1-85-149 (S.D.Ohio). When workers later learned of such incidents, they suffered severe and debilitating emotional distress, according to the Plaintiffs' expert, Dr. Lindy. *Day v. NLO,* 811 F.Supp. 1271 (S.D.Ohio), Statute of Limitations Trial, Tr. 4801-02. Thus, this Court holds that a jury question arises as to the Plaintiffs' emotional distress claim.

In sum, this Court is unwilling to grant a motion for summary judgment on the issue of the Plaintiffs' emotional distress. Of course, the Court will reconsider this issue at trial if the Defendants decide to move for a directed verdict.

## PLAINTIFFS' CLAIMS INVOLVING INTENTIONAL TORT AND NEGLIGENCE

The Defendants next argue that this Court should grant summary judgment on the Plaintiffs' claims for intentional tort and neg-

ligence because the testimony of the Plaintiffs' experts demonstrates that the Defendants did not commit an intentional tort or act negligently. The Defendants assert a number of arguments on this issue.

### The Level of the Plaintiffs' Exposure

The Defendants first contend that they cannot be held liable, because class members were never exposed to radiation in excess of federal regulations. The Defendants rely upon the statements of the Plaintiffs' experts for the proposition that "neither defendants nor anyone else could have determined that any of the plaintiffs had received a radiation dose above the levels established by the DOE standards." Defendants' Motion for Summary Judgment, doc. 238, at 9.

In resolving this dispute, the key issue is to determine the dosage of radiation which the Plaintiffs actually received.[5] After presiding over a lengthy statute of limitations trial in which many of the merits of this case were raised, this Court is convinced that factual disputes exist over the dosage of radiation the Plaintiffs received at the FMPC. Weldon Adams, the corporate representative of NLO, has admitted in an affidavit that "some discharges [of radiation] were inevitable." Affidavit of Weldon Adams, ¶ 32, at 11, Defendants' exh. 37, *In re Fernald,* Case No. C-1-85-149 (S.D.Ohio). Evidence surfaced at the statute of limitations trial that NLO could not account for certain amounts of uranium. Thus, we do not know whether the Plaintiffs were exposed to these unaccounted-for quantities of uranium.[6] Consequently, we cannot rule as a matter of law that the Plaintiffs did not receive an excessive dosage of radiation.[7]

---

5. This Court does not reach a conclusion as to whether a defendant is immune from liability if it has met federal requirements for radiation exposure.

6. This Court understands that the Plaintiffs' exposures records are in the hands of the Defendants. Furthermore, at the statute of limitations trial, some evidence surfaced indicating that NLO did not keep accurate exposure records at the FMPC. In light of these considerations as well, summary judgment is particularly inappropriate on this issue.

7. We find it interesting that the Defendants, on another issue, cite the following statement by Senator Wirth on the Senate Floor:

Many DOE workers have been exposed to dangerous levels of radiation and hazardous materials on the job.

Defendants' Reply, doc. 306, at 7 (quoting 138 Cong.Rec. S4639). However, Senator Wirth's statement is no more binding upon this Court than Senator Glenn's. *See infra,* n. 10.

As further support for their argument, the Defendants cite to the decision in *Kesecker v. United States Dept. of Energy*, 679 F.Supp. 726 (S.D.Ohio 1988). *Kesecker* involved an intentional tort action by an FMPC employee alleging injury caused by exposure to uranium dust. Importantly, the *Kesecker* court did not decide the case upon motion; instead, the *Kesecker* court conducted a three day bench trial. As a finding of *fact*, the court determined that the plaintiff had not been exposed to a hazardous quantity of radiation. *Id.* at 730. Similarly, this Court holds that a question of *fact* exists over the Plaintiffs' dosage of radiation. Questions of fact are resolved at trial.

### The Defendants' Mental State

■ In a separate argument, the Defendants contend as a matter of law that they did not possess the requisite mental state to be held liable.

■ The Ohio courts have established that a plaintiff must meet a three-pronged test in order to show that a defendant intended to harm a plaintiff-employee by tortious conduct. The plaintiff must demonstrate in the first prong that the employer knew of the existence of a dangerous process, procedure, instrumentality, or condition within its business operation. *Fyffe v. Jeno's, Inc.*, 59 Ohio St.3d 115, 570 N.E.2d 1108 (1991). Second, the plaintiff must show that the employer knew that the employee was substantially certain to be injured if the employee continued participating in the dangerous process, procedure, instrumentality, or condition. *Id.* Finally, the plaintiff-employee must demonstrate that the employer forced the employee to continue his or her performance of the dangerous task. *Id.* Thus, to prevail in an intentional tort case against an employer, the plaintiff must establish more than negligence or recklessness:

> When the employer acts despite his knowledge of some risk, his conduct may be negligence. Where the risk is great and the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result.

*Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 117, 522 N.E.2d 489, 504 (1988); *see also Shelton v. U.S. Steel Corp.*, 710 F.Supp. 206 (S.D.Ohio 1989) (summary judgment granted because the employee-plaintiff failed to show the defendant possessed the requisite intent); *Scott v. GAF Corp.*, 706 F.Supp. 568 (S.D.Ohio 1988) (directing a verdict for the defendant because defendant did not intend to harm the plaintiff as a matter of law); *but see* Lisa A. Rutenschroer, Note, *The Ohio "Standard" for Workplace Intentional Torts: Fyffe v. Jeno's, Inc.*, 61 Cin.L.Rev. 331, 359–60 (arguing that *Fyffe* blurred the "... already fuzzy line of demarcation separating intentional torts from reckless acts").

Generally, a question of fact arises when a defendant's state of mind is at issue. *See generally, Stukey v. United States Air Force*, 790 F.Supp. 165, 170 (S.D.Ohio 1992) (J. Spiegel) (holding in a sex discrimination case that a question of fact existed over the defendant's intention at the time of a hiring decision). In the case before the Court, reasonable men could differ in determining the Defendants' state of mind. There is circumstantial evidence showing that the Defendants knew of health and safety problems at the FMPC. Weldon Adams, NLO's corporate representative in this litigation, stated that "[m]uch of [the plant equipment at] the facility was in deteriorated condition by the early 1970's and should have been replaced...." Affidavit of Weldon Adams, ¶ 34, at 12, Defendants' exh. 37, *In re Fernald*, Case No. C–1–85–149 (S.D.Ohio).

Moreover, some of NLO's documents indicate that NLO knew that its activities at the FMPC probably would have adverse health and environmental effects. For example, as early as 1959, NLO appears to have recognized that "[h]igh levels of airborne contamination indicate that the existing ore handling ventilation system is inadequate from a Health and Safety standpoint." *See* Plain-

tiffs' Combined Memorandum in Opposition, doc. 301, exh. 1. Still, NLO either delayed in making changes or made none at all. By 1972, NLO officials knew that excessive exposures had occurred. *Id.* Several years later, NLO recognized that "[t]he present ventilation system is of such design that its operation cannot be improved sufficiently to reduce airborne dust to acceptable levels." *Id.*

In consideration of this circumstantial evidence, we conclude that a material question of fact exists as to whether NLO knew that its employees were substantially certain to be injured at the FMPC by excessive exposures to radiation.

## DEFENDANTS' MOTION TO DISMISS THE CLAIMS OF CERTAIN PLAINTIFFS

The Defendants have also moved to dismiss the claims of certain Plaintiffs: Floyd Davis, Elmer Hust, Julia Sansone, Shirley Skiles, Martha Adams, Jimmie Dorton, and James Johnson.[8] In the alternative, the Defendants have asked the Court to grant summary judgment. Upon reviewing the Defendants' Motion, the Defendants premise their argument not upon the sufficiency of the allegations contained in the Complaint, but rather upon the evidence uncovered in discovery. Therefore, we shall consider the Defendants' Motion as one for summary judgment.

The Defendants have three reasons that summary judgment should be granted in its favor: (1) the Plaintiffs have no legitimate property damage claims; (2) the Plaintiffs have not suffered severe and debilitating emotional distress; and, (3) the Plaintiffs' exposures to radiation never exceeded applicable standards. The Court has already considered and discussed the Defendants' second and third reasons in denying other motions by the Defendants. Therefore, we will now briefly consider the Plaintiffs' claims for property damage. In an earlier Order, this Court observed that "[t]he named Plaintiffs have admitted that they do not have claims for property damage." Doc. 311, at 14. Since that Order, the named Plaintiffs in this case have changed somewhat. Nevertheless, the following Plaintiffs have admitted in interrogatories that they do not have a claim for property damage: Floyd Davis, Martha Adams, Jimmie Dorton, and James Johnson. Therefore, the property damage claim of these four Plaintiffs is dismissed.

This Court does not have information on the alleged property damage suffered by the other named Plaintiffs. Therefore, the property damage claims for these Plaintiffs and for the class are still viable.

## DEFENDANTS' MOTION TO DISMISS BASED UPON MOOTNESS

■ The Defendants have also moved to dismiss based upon § 3162 of the National Defense Authorization Act of Fiscal Year 1993, Pub.L. 102–484 [hereinafter "Public Law 102–484"]. On October 23, 1992, President Bush signed into law Public Law 102–484, the National Defense Authorization Act for 1993. Among other features, Public Law 102–484 requires the Department of Energy to establish a medical monitoring program for current and former nuclear weapons plant employees who are subject to significant health risks because of exposure to hazardous or radioactive substances. § 3162(a). The Defendants contend that this new Congressional legislation renders moot the issue of medical monitoring in this litigation.[9]

8. We believe that the Defendants desired to make its motion with regard to all of the named Plaintiffs. After the Final Pretrial Conference, the named Plaintiffs changed somewhat. Despite this Court's assumption, we can consider the Defendants' Motion to Dismiss only with regard to the Plaintiffs referred to in the Motion (doc. 253) and the Notice of Filing (doc. 315).

9. We note that the Plaintiffs in this case are seeking not only a medical monitoring program, but also compensatory damages, punitive damages, and attorney's fees. Public Law 102–484

does not redress this additional claim of the Plaintiffs. Thus, the Plaintiffs still have a personal stake in the outcome of this litigation. *See Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477–78, 110 S.Ct. 1249, 1253–54, 108 L.Ed.2d 400 (1990).

Consequently, regardless of this Court's decision on the Defendants' Motion to Dismiss with regard to mootness, this litigation would not be ended in its entirety. The Defendants essentially acknowledge this in their Reply brief: "[t]he only issue raised by defendants' motion is whether

A moving party has a heavy burden to show that a case is moot. *United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33, 73 S.Ct. 894, 897–98, 97 L.Ed. 1303 (1953); *Michael J. White v. Terry L. Morris, et al.*, Case No. C–1–88–470 (S.D.Ohio Nov. 25, 1991) (J. Spiegel). A case is moot when events occur during the litigation which render the court unable to grant the requested relief. *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir.1986). Thus, legislation does not moot a case when a plaintiff can obtain relief which is not covered under the new statute. *See id.*

For a number of reasons, the Defendants have not met their heavy burden to show that Public Law 102–484 moots this litigation.[10] First, the Defendants have failed to show that Public Law 102–484 provides the kind of medical monitoring program which the Plaintiffs are seeking in this case. The Plaintiffs in this litigation are seeking injunctive relief in the form of medical monitoring, epidemiology, and data exchange, similar to the program which grew out of the *In re Fernald Litig.*, Case No. C–1–85–149 (S.D.Ohio). *See* Amy B. Blumenberg, Note, *Medical Monitoring Funds: The Periodic Payment of Future Medical Surveillance Expenses in Toxic Exposure Litigation*, 43 Hastings L.J. 661 (March 1992) (discussing various cases involving medical monitoring, including *In re Fernald*). In contrast, the medical monitoring established in Public Law 102–484 would not include epidemiology and the exchange of data.[11]

Furthermore, Public Law 102–484 limits medical monitoring to those FMPC employees who have a serious health risk because they were exposed to a high level of hazardous and radioactive substances. We assume that the DOE would use NLO's records to determine which employees have a serious health risk. On the other hand, the medical monitoring program sought by the Plaintiffs would not hinge solely upon NLO's exposure records. Additionally, the newly passed legislation does not appear to cover frequenters at the FMPC who are also class members in this litigation; whereas the medical monitoring program sought by the Plaintiffs would apply to frequenters.

In sum, this Court is not convinced that the medical monitoring established by Congress replicates in its entirety the medical monitoring program sought by the Plaintiffs in this action. Moreover, many features of the Congressional medical monitoring program are yet to be determined. *See* Public Law 102–484, § 3162(c) (allowing until May 1993 for the Secretary of Energy and the Secretary of Health and Human Services to reach an agreement over the medical monitoring program required and the accompanying regulations). As a result, this Court is unprepared to dismiss the Plaintiffs' request

plaintiffs remedy moots their claim for medical monitoring relief...." Defendants' Reply, doc. 306, at 2; *see also Naturist Soc'y, Inc. v. Fillyaw*, 958 F.2d 1515, 1519 (11th Cir.1992) (change in regulations does not moot action because of the plaintiffs' claim for damages). Thus, the sole issue before this Court is whether Public Law 102–484 prevents the Plaintiffs from pursuing their claim for a medical monitoring program.

10. As support for their position, the Defendants cite Senator John Glenn's prediction on the Senate floor that Public Law 102–484 will "... provide most if not all of the relief sought ..." in this litigation. 138 Cong.Rec. S17829–30. We note, however, that one Senator's prediction as to the outcome of legislation is certainly not binding upon this Court. *See Dellums v. U.S. Nuclear Regulatory Comm'n*, 863 F.2d 968, 978–79 (D.C.Cir.1988) ("we do not believe that congressional predictions either typically or in this case answer the same analytical question that the redressability component of Article III presents to us"). This Court believes that it would be a

very poor precedent to hold that one Senator's comment on the floor would be dispositive on the interpretation of legislation. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (a court should look to the plain language of a statute to determine its meaning).

11. In response, the Defendants maintain that the Plaintiffs will be "evaluate[d] fully" under § 3162 and through epidemiological studies which are already under way under the auspices of the Department of Health and Human Services ("HHS").

While § 3162 does require that the Plaintiffs be "evaluate[d] fully," this Court does not know the specifics of such an evaluation. Obviously, the word "fully" is subject to varying interpretations. Furthermore, this Court has no way of knowing whether the epidemiological studies of HHS which are ongoing will ultimately be used by the DOE in its medical monitoring. We certainly hope that DOE will use the results of HHS studies, but Public Law 102–484 does not require it.

for a medical monitoring program at this point. The Defendants have not demonstrated to this Court that Public Law 102–484 encompasses the medical monitoring program which the Plaintiffs are seeking in this case.

However, this Court is troubled by the potential of two medical monitoring programs which may substantially overlap each other. Therefore, once the Congressionally-imposed medical monitoring is underway, this Court will entertain motions dealing with any unnecessary overlap between the two programs. Until then, however, we hold that the Plaintiffs may pursue their requested relief of a medical monitoring program.

## CONCLUSION

This Court has carefully considered the Defendants' various dispositive motions. We are persuaded that factual disputes exist concerning the Plaintiff-employees' claim of intentional tort and the Plaintiff-non-employees' claims of intentional tort and negligence. Furthermore, we do hold that Public Law 102–484 does not moot this litigation.

Accordingly, the Defendants' Motions for Summary Judgment and to Dismiss are denied. We note, though, that the property damage claims of Martha Adams, Jimmie Dorton, James Johnson, and Floyd Davis are dismissed.

SO ORDERED.