David DAY, et al., Plaintiffs,

v.

NLO, et al., Defendants.

No. C–1–90–67.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 23, 1994.

Thomas Joseph Kircher, Kircher, Robinson, Cook, Newman & Welch, Paul M. De Marco, Waite, Schneider, Bayless & Chesley Co., Allen Paul Grunes, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, for plaintiffs.

William Howard Hawkins, II, Frost & Jacobs, John Stephen Wirthlin, Sr., Beirne & Wirthlin, Cincinnati, OH, Herbert L. Fenster, McKenna, Conner & Cuneo, Washing-

ton, DC, David M. Bernick, Kevin T. Van Wart, Douglas James Kurtenbach, Kirkland & Ellis, Chicago, IL, for defendants.

### ORDER TRANSFERRING CASE

SPIEGEL, District Judge.

After serious consideration, this Court has concluded that the interests of justice and impartiality will be best served by the transfer of this case to The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, for the purposes of conducting the hearing to review the fairness of the proposed settlement. The undersigned has presided over the proceedings in this case since January 30, 1990. It has been vigorously and at times acrimoniously contested by very competent attorneys. Throughout these four and one half years, the Court has actively encouraged the parties to resolve this dispute through settlement. After empaneling a jury and hearing the testimony of several of the Plaintiff Class' witnesses, at the request of counsel, the Court temporarily suspended proceedings for a week. This allowed the parties to enter into full time settlement negotiations, under the direct supervision of the Court. At the end of the week a provisional settlement was hammered out.

The Class has been given notice of the settlement and has had an opportunity to file written objections. The Court must now conduct a hearing to review the fairness of the proposed settlement. Because of this Court's active and extensive participation in the settlement negotiations, out of an abundance of caution, we find that this fairness hearing should be conducted by one with some greater distance from the struggles that lead to the proposed settlement.

### A BRIEF HISTORY OF THIS LITIGATION

Starting in the 1950's National Lead of Ohio ("NLO") manufactured components of nuclear weapons needed for this country's armed forces at the Feed Materials Production Center ("FMPC" or "Fernald"), located in Fernald, Ohio. The Plaintiffs, workers and frequenters at the FMPC, brought this lawsuit in 1990 against NLO, and its parent company National Lead Industries. This class action was brought under the Price–Anderson Act as amended in 1988 to create federal jurisdiction for public liability actions arising from an extraordinary nuclear occurrence. 42 U.S.C. § 2210(n)(2) (1988).

In 1991, the Defendants moved to dismiss this case based upon the statute of limitations. Because of the considerable publicity surrounding a prior suit brought by the property owners who lived around the FMPC, see In re Fernald, No. C–1–85–149, the Defendants argued that the Plaintiffs knew or should have known of their cause of action years before bringing suit. In framing this question the Court determined that the Plaintiffs' claims were not based on actual disease but rather fear of disease due to an allegedly increased risk of cancer caused by exposure to excessive levels of radiation. Therefore, the Plaintiffs' claims are more properly viewed as claims for emotional distress. Such claims are governed by the four-year statute of limitations in Ohio Revised Code § 2305.09. Order, April 17, 1991, Document 46. The Court then held a trial on the issue of when the statute of limitations began to run. The jury found that some of the Plaintiffs were time-barred. Other Plaintiffs, however, were permitted to continue in their lawsuit.

The Court certified its decision in regard to the statute of limitations for interlocutory appeal. The Sixth Circuit Court of Appeals declined to review our ruling stating that:

> Because the nature of plaintiffs' action is not fully defined and they still have matters pending in the district court, we find that this interlocutory appeal will not serve the interest of judicial economy. We therefore dismiss plaintiffs' appeal as inappropriate for decision at this time under Rule 54(b).

*Day v. NLO,* 3 F.3d 153, 155 (6th Cir.1993).

Therefore, this Court proceeded to certify a class as follows:

> [a]ll employees and contractors of defendant NLO, Inc. and the employees of the NLO contractors who were present at the Feed Materials Production Center for six

continuous weeks and who were no longer present at the FMPC after December 31, 1981. This claim does not include any persons who were members of the class certified in *In re: Fernald Litigation,* Case No. C–1–85–149.

Order Denying Motion for Reconsideration, November 20, 1992, Document 311; *Day v. NLO,* 811 F.Supp. 1271, 1274 (S.D.Ohio 1992).

In our Order Granting the Plaintiffs' Motion for Class Certification (doc. 281), we described the Plaintiff Class' claim in this manner:

> The plaintiffs claim that the defendants operated the FMPC in such a way as to negligently or intentionally expose the plaintiffs to dangerous levels of radioactive and hazardous materials. As a result of this alleged exposure, the plaintiffs contend that their personal property has been damaged[1] and that they now suffer severe emotional distress in the form of increased fear of cancer.
>
> \*     \*     \*     \*     \*     \*
>
> The plaintiffs in this action primarily seek relief in the form of a court-supervised medical monitoring program.

Order Granting the Plaintiffs' Motion for Class Certification, June 22, 1992, Document 281; *Day v. NLO,* 144 F.R.D. 330, 335 (S.D.Ohio 1992).

In the fall of 1992, the Defendants moved to dismiss all of the Fernald Employees' claims, except for intentional tort. The Defendants based their argument upon the exclusive remedy provided under worker's compensation. The Court granted the Defendants' Motion, although it also allowed frequenters of the FMPC to proceed with their negligence claims, as they were not employees of NLO, and therefore not subject to the worker's compensation exclusion. A corollary to this decision is that issues concerning worker's compensation were excluded from

this litigation.[2] Order Denying Motion to Reconsider, November 20, 1992, Document 311; *Day v. NLO,* 811 F.Supp. 1271 (S.D.Ohio 1992).

The Defendants then moved for summary judgment, based in part on the contention that the Plaintiffs have not suffered severe and debilitating distress as a matter of law. The Court denied the Defendants' Motion for Summary Judgment, reasoning that the severe and debilitating requirement does not apply to emotional distress cases which are accompanied by physical stimulus:

> the Plaintiffs are claiming in this lawsuit to have suffered physical injury as a result of a physical stimulus—being exposed to radioactive and other hazardous materials.

Order, January 11, 1993, Document 327; *Day v. NLO,* 814 F.Supp. 646, 649 (S.D.Ohio 1993). Consequently, in light of the Plaintiffs' alleged physical injury, the Court held that the Plaintiff Class did not need to demonstrate severe and debilitating emotional distress. *Id.* at 650; *see also* Order of Clarification, March 22, 1994, Document 386; *Day v. NLO,* 851 F.Supp. 869, 877–79 (S.D.Ohio 1994).

In making the determination that the Plaintiff Class' emotional distress claims had a physical basis, the Court was careful to clarify that this litigation did not involve a claim for recovery for actual disease, but only for emotional distress arising out of an alleged exposure to excess radiation. The Court stated:

> [A]ny claims for cancer, claims for genetic abnormality and for other physical injuries by members of the Plaintiffs' Class will not be adjudicated and are specifically excluded from consideration in this case. Conversely, they may be reserved for future litigation.

Order of Clarification, March 22, 1994, Document 386; *Day v. NLO,* 851 F.Supp. at 878.

---

1. This property damage claim was subsequently dropped.

2. Issues concerning worker's compensation were not adjudicated in this class action. After the proposed settlement was negotiated, a dispute arose concerning access to records concerning worker's compensation. We note again that the matter of worker's compensation was excluded from this case. The Plaintiffs remain free to pursue any issues concerning worker's compensation in a separate action.

The Court then ordered the case set for a summary jury trial. The Defendants objected and appealed both our summary jury trial order and our class certification order to the Sixth Circuit. The Court of Appeals granted the Defendants' petition for mandamus in regard to the summary jury trial, but denied mandamus in regard to class certification. *In re NLO, Inc.*, 5 F.3d 154 (6th Cir.1993). The Court then set the case for trial on the merits. As noted above, after a few weeks of trial the parties reached a tentative settlement.

## DISCUSSION

For some time now, this Court has grappled with concerns regarding the level of participation a judge should take facilitating a settlement over which the Court is ultimately required to pass judgment.[3] Ordinarily, in jury cases, the Court's attempts to encourage settlements is advantageous to the parties, and since the Court is not the ultimate decision maker, relatively free from controversy. The Courts role in settling bench trials deserves much closer scrutiny. Class actions tried to a jury fall somewhere in between.

How involved a judge becomes in settlement procedures in class actions over which he is presiding, will depend on his or her personality. As the Manual for Complex Litigation states:

Neither the Bench nor the Bar agrees on the role a trial judge should play in bringing about a settlement. The temperament, style, and philosophy of the individual judge are important factors, as is the nature of the case. Some judges do little more than suggest the general desirability of a settlement and see that the case moves steadily towards trial. Others take an active part in leading settlement discussions, pointing out strengths and weaknesses of the respective positions of the parties, presenting additional considerations and alternative forms of compromise, meeting separately with the parties if all consent, and even recommending specific terms of settlement. Some ask or require that a representative of each party with settlement authority attend the discussions; others prefer to conduct settlement conferences with only counsel present. Many judges limit their settlement activities to jury cases; others believe that they can, without jeopardizing their impartiality in fact or appearance, take an active role in non-jury cases as well. Some are active from the outset of the litigation, while others prefer to wait until later in the proceedings or until the time of trial. The effectiveness of the judge in facilitating settlement depends, of course, also on the attitude of the parties. Although counsel ordinarily welcome efforts by the Court to assist in the settlement process, measures viewed by them (as coercive) will be resented and are rarely productive.

Judicial involvement in settlement discussions, however, must not be permitted to affect the perception of the parties that the judge will be fair and objective, both at trial, if negotiations fail, and in passing on the merits of the settlement, if, as in class actions, it must be submitted to the Court for approval. Although the Court may aid settlement discussions by indicating its current views on some issue, it should never distort those views for strategic effect and should give the same information to all parties.

Manual for Complex Litigation, II, 160.

There are those who believe that the district judge should take no part in helping to settle the class action if he or she will ultimately determine whether the proposed settlement is fair, adequate, and reasonable under Rule 23(e). That opinion favors the view that the judge choosing to take part in helping to settle a class action should transfer the case to another judge to conduct Rule 23(e) fairness hearings, or should have assigned another judge or magistrate to conduct settlement negotiations instead of conducting them him/herself.

In the case at bar, this Court has taken an especially active and affirmative role in set-

---

3. This issue was discussed at length in a speech delivered by the undersigned at the 26th Transferee Judges Conference on October 5 & 6, 1993, and soon to be published in the University of Cincinnati Law Review.

44

tlement negotiations. Some would argue that it would be highly unlikely that a judge who takes this sort of aggressive role would ever fail to find the settlement to be fair, adequate, and reasonable. In other words, it is hard to believe that he could maintain his ability to be the disinterested appraiser envisioned in Federal Rule of Civil Procedure 23(e). Others maintain that the judge, in passing on the fairness of the settlement, may overlook the interest of the absent class members. One can agree that if the Court makes suggestions to be included in the settlement, it can put itself in the position of having such an investment in the settlement that it will be difficult for the judge to objectively determine whether the settlement is fair.

## CONCLUSION

Indeed, this Court has participated actively in the negotiations which have lead to the proposed settlement. This has been a hard fought and vigorously advocated case. We are of the opinion that the settlement negotiations were conducted at arms length and that the proposed settlement is the best which the opposing parties could have reached under the facts of this case. In transferring the case, we do not intend to indicate any misgivings we have concerning the proposed settlement. Nor do we believe that a trial judge who has participated in settlement negotiations is necessarily incapable of fairly reviewing that settlement. However, out of an abundance of caution, we are anxious to avoid even the appearance of unfairness. We feel that in this case, the sort of impartial review contemplated by the Federal Rules would best be accomplished by the transfer of that review to a judge who can bring a wholly fresh perspective to the task of evaluating the proposed settlement.

Accordingly, we hereby TRANSFER this matter to The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio. However, we retain jurisdiction for the purpose of deciding pending motions concerning post-settlement discovery. Due to peremptory settings on Judge Beckwith's calendar, the fairness hearing previously set for October 3, 1994 is rescheduled for October 11, 1994 at 2:00 P.M. in Room 842, Potter Stewart United States Court House, Cincinnati, Ohio.

SO ORDERED.